IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GGA, INC. dba PACIFIC FENCE; and ISLAND INSURANCE COMPANY, LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>KIEWIT INFRASTRUCTURE WEST CO., fka KIEWIT PACIFIC CO.; ET AL.<br><br>Defendants. | Civ. No. 18-00110 JMS-WRP<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT, ECF NOS. 36, 49, 51, 57 |

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT, ECF NOS. 36, 49, 51, 57

## I. INTRODUCTION

In this complicated declaratory-relief action, the parties raise an open and important question of Hawaii insurance law: whether (or under what circumstances) an insurer that defends an insured after issuing a reservation-of-rights letter may seek reimbursement of defense costs and fees. *Compare Scottsdale Ins. Co. v. Sullivan Props., Inc.*, 2007 WL 2247795, at *7 (D. Haw. Aug. 2, 2007) (predicting under the *Erie* doctrine that the Hawaii Supreme Court would allow reimbursement from an insured where the insurer expressly reserved

the right to recoup costs) *with Exec. Risk Indem., Inc. v. Pac. Educ. Servs., Inc.*, 451 F. Supp. 2d 1147, 1163 (D. Haw. 2006) (declining to adopt such a ruling, commenting that "a ruling on reimbursement would be a major decision on Hawaii insurance law that could have a tremendous impact on the duty to defend in hundreds of other cases") *and Burlington Ins. Co. v. Panacorp, Inc.*, 758 F. Supp. 2d 1121, 1133 (D. Haw. 2010) (staying declaratory relief action, reasoning in part that "Burlington's entitlement to reimbursement while it is currently defending Panacorp, Norva, and PSC implicates important and unsettled state interests").

After carefully analyzing the voluminous record, however, the court does not weigh in on the insurer-insured reimbursement question—this action's complex procedural history provides a poor vehicle to address it. And, ultimately, the main issue is different. Here, the court addresses reimbursement based on narrow construction-contract indemnity provisions (that is, not based on an *insurance* contract), and where an insurance company is not seeking reimbursement from its insured. Moreover, this court is deciding motions after Hawaii state courts have already specifically ruled, in a unique set of circumstances, that the indemnitor owed no duty to defend (and never should have had such a duty). Based on these unique factors, the court issues this narrow, but necessarily lengthy order. The court turns to the specifics:

In this action, Plaintiffs GGA, Inc., dba Pacific Fence ("Pacific Fence") and Island Insurance Company, Ltd. ("Island Insurance") (collectively, "Plaintiffs") seek reimbursement from Kiewit Infrastructure West Co. ("Kiewit") of the fees and costs incurred by Island Insurance for defending Kiewit in an underlying state court action, *Arthur v. Department of Hawaiian Homelands, et al.*, Civ. No. 05-1-1981-11 (JPC) (Haw. 1st Cir. Ct.) ("the *Arthur* litigation"). The court now faces four motions. Plaintiffs move for partial summary judgment, ECF No. 36, seeking a declaration that they owed no duty to defend Kiewit in the *Arthur* litigation. Kiewit opposes and responds with counter-motions for summary judgment, arguing that Plaintiffs' action fails on several waiver-related grounds— judicial estoppel, res judicata (claim preclusion), prior lack of a compulsory counterclaim, statute-of-limitations bar—or fails because reimbursement of defense fees and costs is unavailable as a matter of law. *See* ECF Nos. 49, 51, 57.

As detailed to follow, the court GRANTS the motions in part and DENIES them in part. Specifically, the court GRANTS Kiewit's motion directed at Pacific Fence, ECF No. 49, and DISMISSES Pacific Fence as a Plaintiff. Pacific Fence was dissolved in 2013, and lacks standing to seek reimbursement relating to duties arising out of the indemnity provisions of its October 15, 1999 subcontract with Kiewit. Nevertheless, co-Plaintiff Island Insurance does have

standing to seek declaratory relief, and its claims are not barred. The court DENIES Kiewit's motions arguing otherwise, ECF Nos. 51 & 57.

The court GRANTS Plaintiffs' motion seeking declaratory relief, ECF No. 36, in favor of Island Insurance. Pacific Fence—and thus Island Insurance, which covered Pacific Fence's potential liability arising out of the indemnity provisions of Pacific Fence's subcontract with Kiewit—owed no duty to defend Kiewit in the *Arthur* litigation. This conclusion follows from (1) the main holding in *Arthur v. Department of Hawaiian Homelands*, 138 Haw. 85, 377 P.3d 26 (2016) ("*Arthur II*"); and (2) subsequent October 2017 rulings in the *Arthur* litigation by the First Circuit Court of the State of Hawaii. Island Insurance is entitled to enforce its May 8, 2006 reservation-of-rights letter against Kiewit.

## II. <u>BACKGROUND</u>

The underlying historical facts are largely undisputed. To explain the context for the current motions, the court draws upon (1) the Hawaii Intermediate Court of Appeals' 2015 opinion in *Arthur v. Department of Hawaiian Home Lands*, 135 Haw. 149, 346 P.3d 218 (Haw. Ct. App. 2015) ("*Arthur I*"); (2) the Hawaii Supreme Court's 2016 opinion in *Arthur II*, which affirmed *Arthur I* in part and vacated it in part; and (3) specific documents from the *Arthur* trial court proceedings (both before and after *Arthur II's* remand) that the parties have made

part of this court's record or are viewable on the public docket. The *Arthur* litigation spanned nearly thirteen years, involving questions of negligence and extensive proceedings regarding duties to defend and indemnify arising out of various construction contracts between several parties. The court recounts only the background necessary to understand the current dispute between Island Insurance and Kiewit, although that background is nevertheless quite lengthy.

## A.    Relevant Contracts and Indemnity Provisions

In 1998, the State of Hawaii Department of Hawaiian Home Lands ("DHHL") retained Kamehameha Investment Corporation ("KIC") to develop a Honolulu residential subdivision, the Kalawahine Streamside Housing Development ("Kalawahine Streamside"), on Hawaiian home lands. KIC then contracted with, among others, (1) Sato and Associates, Inc. ("Sato") for civil engineering work, (2) Coastal Construction Co. ("Coastal") as the general contractor, (3) Design Partners, Inc. ("Design Partners") as an architect, and (4) Kiewit as a general contractor for grading and site work. *See generally Arthur II*, 138 Haw. at 87-88, 377 P.3d at 28-29. In turn, Kiewit subcontracted with Pacific Fence to construct a "debris fence between the constructed homes and the adjacent hillside." *Id.* at 89, 377 P.3d at 30.

The KIC/Kiewit contract was large—KIC paid Kiewit over $5 million. *See Arthur I*, 135 Haw. at 156, 346 P.3d at 225. The Kiewit/Pacific Fence subcontract was not—Kiewit paid Pacific Fence "approximately $18,235.74" for construction of a "chain link fence." *Id.* at 157, 346 P.3d at 226; *see also* ECF No. 36-5 at PageID #772.

KIC's contracts with Sato, Coastal, Design Partners, and Kiewit each included similar indemnity (or "hold harmless") clauses, ostensibly requiring the contractors to indemnify KIC for harm caused by the contractor's negligence or willful actions or omissions. For example, a March 10, 1998 Project Consultant Agreement between KIC and Sato contained the following hold harmless clause:

> Consultant [Sato] hereby agrees to indemnify, defend and hold harmless Developer [KIC], and each of its officers, directors and employees, from and against any and all claims, demands, losses, liabilities, actions, lawsuits, proceedings, judgments, awards, costs and expenses (including reasonable attorneys' fees), *arising directly or indirectly, in whole or in part, out of work undertaken by Consultant [Sato] outside the scope of this Agreement and/or out of the negligence or any willful act or omission of Consultant [Sato], or any of its officers, directors, agents or employees, in connection with this Agreement or Consultant's [Sato's] services or work hereunder*, whether within or beyond the scope of its duties or authority hereunder. The provisions of this Section shall survive completion of Consultant's [Sato's] services hereunder and/or the termination of this Agreement.

*Arthur II*, 138 Haw. at 88, 377 P.3d at 29 (names and emphasis added).[1]  KIC had

an equivalent provision with Kiewit, requiring Kiewit to indemnify KIC as

follows:

> To the fullest extent permitted by law, [Kiewit] shall
> indemnify, defend, and hold harmless [KIC], [Sato], [and
> DHHL] . . . from and against all claims, damages, losses,
> costs, and expenses, including but not limited to
> attorney's fees, arising out of or resulting from
> performance of the Work, provided that such claim,
> damage, loss or expense is attributable to bodily injury,
> sickness, disease or death, or to injury to or destruction of
> tangible property (other that (sic) the Work itself)
> including loss of use resulting therefrom, but only to the
> extent caused in whole or in part by any negligent acts or
> omission of the Contractor, a Subcontractor, . . . or
> anyone for whose acts they may be liable, regardless of
> whether such claim, damage, loss, or expenses is caused
> in part by a party indemnified hereunder.

*Arthur I*, 135 Haw. at 156-57, 346 P.3d at 225-26 (square brackets in original).

In turn, Kiewit's October 15, 1999 subcontract with Pacific Fence

included a similar indemnity provision requiring Pacific Fence to indemnify

Kiewit for "claims, suits, or liability" for damages caused by Pacific Fence.  Much

of the present action arises from disputes regarding the scope of this subcontract's

indemnity provision.  The subcontract provided:

---

[1] Likewise, DHHL's contract with KIC had an indemnity provision requiring KIC to
indemnify DHHL for claims arising out of that contract.  *See Arthur I*, 135 Haw. at 155, 346
P.3d at 224.

Section 11. INDEMNIFICATION. To the fullest extent permitted by law, Subcontractor [Pacific Fence] specifically obligates itself to Contractor [Kiewit], Contractor's surety, Owner [KIC] and any other party required to be indemnified under the Prime Contract, jointly and severally, in the following respects, to-wit: . . . .

(b) To defend and indemnify them against and save them harmless from any and all claims, suits or liability for damages to property including loss of use thereof, injuries to persons, including death, and from any other claims, suits or liability on account of acts or omissions of Subcontractor [Pacific Fence] or any of its subcontractors, suppliers, officers, agents, employees or servants, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; *provided however, Subcontractor's [Pacific Fence's] duty hereunder shall not arise if such claims, suits or liability, injuries or death or other claims or suits are caused by the sole negligence of Contractor [Kiewit]*, unless otherwise provided in the Prime Contract.

ECF No. 36-5 at PageID #775 (emphasis added).

Island Insurance was Pacific Fence's commercial general liability ("CGL") insurance carrier during relevant periods. In 1999, Island Insurance issued a certificate of insurance to Pacific Fence for work on Kalawahine Streamside that included Kiewit as an "additional insured" of the Island Insurance CGL policy. *See* Toby Tonaki Decl. ¶ 4, ECF No. 36-4 at PageID #766. But, by 2003, Pacific Fence's Island Insurance CGL policy for Kalawahine Streamside no longer included Kiewit as an "additional insured." *Id.* ¶ 9, ECF No. 36-4 at

PageID #767.  Instead, the policy covered Pacific Fence's liability for damages for "bodily injury" or "property damage" assumed under an "insured contract."  *See* ECF No. 36-11 at PageID #810.  A CGL policy often excludes coverage for damages resulting from an insured's contractual liability, but Pacific Fence's 2003 policy included coverage for certain contractual liability by way of an exception to the contractual exclusion.  *See id.* ("This exclusion [for contractual liability] does not apply to liability for damages . . . (2) [a]ssumed in a contract or agreement that is an 'insured contract[.]'").[2]

## B.     The Underlying *Arthur* Litigation

Mona Arthur and her husband William leased a home in Kalawahine Streamside from the DHHL on October 31, 2000.  "They typically gardened on the hillside behind their home about three times a week."  *Arthur II*, 138 Haw. at 87, 377 P.3d at 28.  The hillside was steep.  "To access the hillside, the Arthurs crossed a concrete drainage ditch and climbed over a two-foot high chain link

---

[2] The 2003 policy defined an "insured contract" in part as:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

ECF No. 36-11 at PageID #819.

fence.  Mona wore sneakers with snow spikes to prevent her from sliding down the hill."  *Id.* at 87, 377 P.3d at 28.  "Mona accessed the hillside from the Arthurs' backyard by walking across a four-foot by eight-foot wooden board to cross the drainage ditch and then William Arthur would help her over the fence."  *Arthur I*, 135 Haw. at 154-55, 346 P.3d at 223-24.

On November 10, 2003, the Arthurs were gardening on the hillside. William left for a few minutes to get water.  When he returned, he found Mona lying in the concrete ditch.  "No one witnessed how Mona came to be in the ditch. Mona suffered severe head injuries, fell into a coma, and died on March 9, 2004." *Arthur II*, 138 Haw. at 87, 377 P.3d at 28.

On November 4, 2005, the Arthurs (i.e., Mona Arthur's estate and William Arthur) instituted the *Arthur* litigation by filing a wrongful death action in the First Circuit Court of the State of Hawaii.  Their November 8, 2005 first amended complaint named the DHHL, KIC, Design Partners, Coastal, and Sato (along with the Association of Kalawahine Streamside Apartment Owners or "AOAO") as defendants, asserting claims (among others) for:

> a. Negligent design of the hillside area, including the fence and culvert;
>
> b. Negligent construction of the hillside area, including the fence and culvert; [and]

      c.      Negligent supervision of the construction of the
      hillside area, including the fence and culvert.

*Id.* at 87, 77 P.3d at 28.[3]  The Arthurs, however, did not name Kiewit or Pacific

Fence as defendants.  *See id.* at 89, 377 P.3d at 30; *id.* at 90 n.3, 377 P.3d at 31 n.3.

## C.      The Parties Seek Indemnity and Defenses

      Facing a lawsuit from the Arthurs, the various defendants (i.e., the

DHHL, KIC, Sato, Coastal, and Design Partners) began invoking the

indemnity/hold harmless clauses in the various construction contracts, tendering

their defenses to different parties.  These tenders of defenses resulted in a

complicated series of letters, supplemental pleadings, motions, and rulings in the

*Arthur* litigation.  *See, e.g.*, *Arthur I*, 135 Haw. at 161-66, 346 P.3d at 230-36

(describing multiple tenders, crossclaims, and other trial-court proceedings from

2005 to 2013).

      As detailed to follow, the ultimate result (at least before *Arthur I* and

*Arthur II* were published in 2015 and 2016) was that almost *all* of the *Arthur*

defendants looked contractually to Pacific Fence for a complete or partial defense

against the Arthurs' suit.  Pacific Fence—only a minor subcontractor for

---

[3] On December 3, 2009, the Arthurs filed a second amended complaint against the same
defendants that added a claim for punitive damages against KIC, based on allegations that a KIC
employee willfully and wantonly ordered Sato to lower the height of the fence from four feet to
two feet to increase profits, and that a four-foot fence would have prevented Mona Arthur from
falling into the ditch.  *See Arthur II*, 138 Haw. at 88, 377 P.3d at 29.

Kalawahine Streamside's construction—at one point was responsible for solely or jointly defending almost everyone based on a "pass through" theory, and by applying insurance law principles and an interpretation of *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Haw. 286, 292, 944 P.2d 83, 89 (Haw. Ct. App. 1997) (examining a commercial indemnity contract and applying the "complaint allegation" rule whereby an insurer has a duty to defend an entire suit—alleging both covered and uncovered claims—that raises a potential for indemnification liability, and where such a duty to defend begins when the underlying complaint is filed).

Essentially, the DHHL and others tendered defenses to KIC, KIC tendered those defenses to Kiewit and others, and Kiewit and others then tendered to Pacific Fence. Because Pacific Fence allegedly had at least some potential liability for its part in its construction of the fence, Pacific Fence was required— according to subsequent rulings by the state circuit court and its interpretation of *Pancakes of Hawaii*—to defend the entire suit (or share in its defense). This responsibility included defending against uncovered claims for alleged liability of the DHHL, KIC, Sato, Design Partners, and Kiewit. And those duties to defend began when *Arthur* was filed in November 2005. To follow, the court summarizes relevant proceedings.

In a December 15, 2005 letter, KIC tendered its defense of *Arthur* to Sato pursuant to the hold harmless provisions of the KIC/Sato contract. *See Arthur II*, 138 Haw. at 89, 377 P.3d at 30. KIC also tendered its defense to Kiewit in a December 1, 2005 letter. KIC followed with formal legal action on December 21, 2005 by filing (1) a third-party complaint in *Arthur* against Kiewit, and (2) crossclaims against Sato, Design Partners, and Coastal, seeking declarations, among other relief, that those parties owed a duty to defend and indemnify KIC against the Arthurs' suit based on indemnity provisions in their respective contracts. *See id.* at 89, 377 P.3d at 30.

Similarly, on January 12, 2006, the DHHL filed crossclaims in *Arthur* against "KIC, Design Partners, Coastal, AOAO, and Sato, alleging, among other things, that the [DHHL] was 'entitled to defense, indemnification, contribution, subrogation and/or reimbursement from one or more Cross-claim Defendants.'" *Id.* at 89, 377 P.3d at 30.

After the December 21, 2005 third-party complaint was filed against Kiewit, Kiewit filed a fourth-party complaint against Pacific Fence on January 31, 2006, asserting claims for contribution and that Kiewit was "entitled to an immediate defense and full indemnification from Pacific Fence," *id.* at 89, 377 P.3d at 30, based on the hold harmless provision in the Kiewit/Pacific Fence

subcontract. Kiewit formally tendered its defense to Pacific Fence on February 9, 2006. *Id.* at 89, 377 P.3d at 30.

Pacific Fence answered Kiewit's fourth-party complaint, denying that Kiewit was entitled to an immediate defense and full indemnification. Pacific Fence also filed a counterclaim against Kiewit alleging, among other things, that Pacific Fence was entitled to indemnity and/or contribution from Kiewit (although the factual basis for that allegation was not explained). *See Arthur I*, 135 Haw. at 161, 346 P.3d at 230; ECF No. 36-15 at PageID #896 (amended counterclaim).[4] Pacific Fence's counterclaim, however, did not specifically seek reimbursement from Kiewit of any defense costs it might incur.

On February 9, 2006, KIC tendered its defense to Pacific Fence by filing a crossclaim against Pacific Fence in *Arthur*, asserting that because Pacific Fence must defend and indemnify Kiewit (based on the hold harmless provision in the Kiewit/Pacific Fence subcontract), Pacific Fence was also required to defend and indemnity KIC. *See Arthur II*, 138 Haw. at 89, 377 P.3d at 30; ECF No. 36-16 at PageID #909. Similarly, the DHHL followed its previous crossclaims with a formal tender letter to KIC on March 6, 2006, and "[i]n turn, KIC tendered the

---

[4] Both Kiewit's fourth-party complaint against Pacific Fence, and Pacific Fence's counterclaim were amended in April 2010 after the Arthurs filed a second amended complaint in 2009. *See Arthur II*, 138 Haw. at 89, 377 P.3d at 30; ECF Nos. 36-14 & 36-15.

defense of DHHL to Kiewit.  Kiewit then tendered that defense to Pacific Fence."

*Arthur II*, 138 Haw. at 89, 377 P.3d at 30.

**D.    Island Insurance Provides Defenses While Reserving Rights**

Facing multiple tenders, Pacific Fence turned to its CGL carrier, Island Insurance, for protection.  By letter of May 4, 2006, Island Insurance accepted (on behalf of Pacific Fence) Kiewit's tender of defense to the Arthurs' complaint, subject to a detailed reservation of rights.  The letter told Kiewit the following:

> Island will provide [Kiewit] with a defense to the complaint, subject to the following reservation of rights. . . .
>
> By paying for Kiewit's defense, Island does not waive, and will not be estopped from asserting, any of the terms or conditions contained in the referenced insurance policy or any defenses Island may have to any alleged liability under the policy, including but not limited to any alleged liability to settle any claims made against Kiewit to indemnify Kiewit against any judgment for damages. Island will not indemnify Kiewit for any liability not covered under the insurance policy.  *Island reserves the right to stop paying for Kiewit's defense or to decline to participate in any settlement of claims against Kiewit should it be determined that there is no potential for Pacific Fence to have to indemnify Kiewit under the subcontract for the Kalawahine Streamside project. Island reserves the right to seek reimbursement from Kiewit of attorneys fees and other costs of defense if it is determined that Pacific Fence was not obligated to defend Kiewit under the subcontract.*  Island also reserves

> the right to seek partial reimbursement from Kiewit of
> attorneys fees and other costs of defense if it is
> determined that Pacific Fence is not obligated to
> indemnify Kiewit under the subcontract.

ECF No. 36-17 at PageID #913 (emphasis added).  Island Insurance examined both its 1999 policy (under which Kiewit was an "additional insured") and the 2003 policy (which covered certain contractual liability of Pacific Fence as an exception to an exclusion) and concluded that the Arthurs' suit was covered under the 2003 policy because Mona Arthur was injured by an "occurrence" in November 2003. *Id.* at PageID #915.

The May 4, 2006 letter made clear that "Kiewit is not entitled to a defense from Island under Pacific Fence's insurance policy [with Island]" because Kiewit was not an "additional insured."  It concluded, however, that the Kiewit/Pacific Fence subcontract "appears to be an 'insured contract'" of Pacific Fence under the CGL policy, *id.* at PageID #916, explaining as follows:

> Accordingly, Island would indemnify Pacific Fence for
> Pacific Fence's liability to Kiewit under the subcontract's
> indemnity clause, to the extent Pacific Fence's liability to
> Kiewit is based upon "bodily injury" caused by an
> "occurrence" during the policy period and not subject to
> any exclusion.  Pacific Fence's policy also states that
> Kiewit's claim against Pacific Fence for attorney's fees
> and costs of defending against KIC's third party
> complaint would be considered to be damages because of
> "bodily injury" for which Pacific Fence is potentially
> covered under the policy.  Thus, although Kiewit itself

does not qualify as an "insured" under Pacific Fence's insurance policy, Island will pay for Kiewit's defense. However, Island will not indemnify Kiewit against any liability for which Kiewit would not be entitled to indemnity from Pacific Fence under the subcontract.

*Id.*[5]

Similarly, on July 26, 2006, Island Insurance's coverage counsel, Keith Hiraoka, issued separate letters to KIC and the DHHL that accepted their tenders "on a pro rata basis with all other persons and entities who are obligated to defend and indemnify [KIC and the DHHL]." ECF Nos. 73-2 at PageID #2274, 2280. Just as the May 4, 2006 letter did as to Kiewit, those letters reserved rights as to KIC and the DHHL as follows:

Island reserves the right to stop participating in KIC's [or the DHHL's] defense or to decline to participate in any settlement of claims against KIC [or the DHHL] should it

---

[5] Island Insurance's coverage counsel reiterated Island Insurance's position in a letter to Kiewit dated September 4, 2007, reading in part:

Just so there is no misunderstanding, Island wishes to re-explain that it is not obligated to defend any party other than Pacific Fence. As explained in previous correspondence, Kiewit does not qualify as an "insured" under Pacific Fence's CGL policy. Island agreed to . . . defend Kiewit in order to discharge its duty to indemnify Pacific Fence against Kiewit's claim for a defense under its subcontract.

ECF No. 44-2 at PageID #1319. It appears that the letter was actually issued on September 4, 2006 (not 2007). *See* S. Storm Decl. ¶ 3, ECF No. 44-1 at PageID #1317. In either case, whether it was 2006 or 2007, Island Insurance was reiterating its position that Kiewit was not an "insured" under the Island Insurance/Pacific Fence CGL policy.

> be determined that there is no potential for Pacific Fence
> to have to indemnify KIC [or the DHHL] under the
> [Kiewit/Pacific Fence] subcontract for the Kalawahine
> Streamside project. Island reserves the right to seek
> reimbursement from KIC [or the DHHL] of attorneys
> fees and other costs of defense if it is determined that
> Pacific Fence was not obligated to defend KIC [or the
> DHHL] under the subcontract.

ECF No. 73-2 at PageID #2275 (KIC) & 2281 (DHHL). Those letters included

similar analysis as in the May 4, 2006 letter, indicating to KIC and the DHHL that

they were not entitled to a defense from Island Insurance under the Island

Insurance/Pacific Fence CGL policy because they were not "additional insureds."

Rather, Island Insurance informed them they were entitled to defenses based on the

Kiewit/Pacific Fence subcontract's indemnity clause because such defense costs

were potentially-covered contractual damages of Pacific Fence. *See* ECF No. 73-2

at PageID #2278 (KIC) & 2284 (DHHL).

And in a May 8, 2007 letter to counsel for Kiewit, KIC, and the

DHHL, Island Insurance's coverage counsel reiterated the scope of the defense it

was providing. *See* ECF No. 44-3 at PageID #1321. The letter was responding to

letters concerning Kiewit's tender to Island Insurance of KIC's and the DHHL's

corresponding tenders to Kiewit. The May 8, 2007 letter stated in pertinent part:

> Island's position with respect to each of your clients is
> the same: Island is not obligated to defend or indemnify
> any of your clients because none of them qualifies as an

18

"insured" under the liability insurance policy issued by
Island to Pacific Fence.

Island had agreed to participate in each of your clients'
respective defenses. Copies of the reservation of rights
letter are enclosed, for your reference. Island is
participating in your clients' defenses because Pacific
Fence's policy covers **Pacific Fence's** liability to Kiewit,
KIC, and the [DHHL] under the indemnity provisions of
Pacific Fence's subcontract with Kiewit. The attorneys
fees and necessary litigation expenses incurred by
Kiewit, KIC, and the [DHHL] constitute damages
because of "bodily injury" for which **Pacific Fence** is
entitled to coverage. Accordingly, the attorney's fees
and other litigation expenses paid by Island to defense
counsel for Kiewit, KIC, and the [DHHL] *reduce* the $1
million per occurrence limit of liability applicable to the
Arthurs' claims.

ECF No. 44-3 at PageID #1321-22 (bold and italicized emphasis in original). It

also took the position that, under various other contracts, other *Arthur* defendants

(e.g., Coastal, Design Partners, and Sato) also had "independent duties to

indemnify and to participate in KIC's defense." *Id.* at PageID #1322.

As summarized earlier, Island Insurance was accepting immediate

defenses—even if it might have also been defending uncovered claims (e.g.,

damages to the Arthurs caused solely by negligence or wrongful acts of the DHHL,

KIC, Kiewit, or Sato)—based on an earlier holding of the Hawaii Intermediate

Court of Appeals in *Pancakes of Hawaii*. In particular, *Pancakes of Hawaii*

recognized well-accepted duty-to-defend insurance-law principles:

The law governing the duty to defend in insurance cases is well settled. The duty to defend is fairly broad and separate and distinct from the duty to indemnify.

> As provided in an insurance contract, the duty to defend is much broader than the duty to pay claims. *Commerce & Indus. Ins. Co. v. Bank of Hawaii*, 73 Haw. 322, 326, 832 P.2d 733, 735 (1992). The duty arises whenever there is a potential for indemnification liability of the insurer to the insured. "Furthermore, 'where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage.'" *Id.* at 327, 832 P.2d at 736 (quoting *First Ins. Co. of Hawaii v. State*, 66 Haw. 413, 417, 665 P.2d 648, 652 (1983)).

*Pancakes of Hawaii*, 85 Haw. at 291, 944 P.2d at 88 (block-quoting *Hawaiian Holiday Macadamia Nut Co., Inc. v. Indus. Indem. Co.*, 76 Haw. 166, 169, 872 P.2d 230, 233 (1994) (other citation omitted)). It then followed some other jurisdictions and imported these insurance-law principles into a more general indemnity-contract context:

> In our opinion, the procedure used to determine the duty to defend based on indemnity contracts can follow the same procedure used in the insurance context. If a complaint alleges claims that fall within the coverage of the indemnity provision, then, according to the complaint allegation rule, the duty to defend begins. This is separate and distinct from the duty to indemnify. Once the trier of fact makes a determination on the claims in the lawsuit, the duty to indemnify will either arise or lie

dormant.  Claims falling within the indemnity provision
will trigger the duty to indemnify, while claims falling
outside the provision will relieve the indemnitor of his or
her duty to indemnify.  In our view, this is the only
equitable interpretation that gives life to non-insurance
indemnity clauses and prevents indemnitors from
benumbing the duty to defend until after a case has been
litigated.

*Id.* at 292, 944 P.2d at 89.

Given *Pancakes of Hawaii*, and given that the Kiewit/Pacific Fence
subcontract was a type of commercial indemnity contract, Island Insurance's
decision (made with experienced coverage counsel) to accept the immediate
defenses with conditions seems to have been entirely prudent.  For example,
among many other *Arthur* litigation rulings, the state circuit court on August 8,
2007 granted a motion for partial summary judgment brought by Kiewit against
Pacific Fence regarding Pacific Fence's duties, finding that:

. . . . Pacific Fence had a duty to defend Kiewit, KIC,
DHHL, and Sato; that any duty to defend DHHL that had
passed to Kiewit, passed through to Pacific Fence as a
matter of law; and any obligation that Kiewit had to
defend KIC and Sato also passed through to Pacific
Fence.

///

///

///

*Arthur I*, 135 Haw. at 163, 346 P.3d at 232; *see also* ECF No. 36-18 at PageID #921-22.[6]

Looking back, however, Kiewit argues that Island Insurance, in addition to issuing reservation-of-rights letters in 2006, should have also filed a declaratory-relief action in that time frame (i.e., 2006-2007) challenging the conclusion that an immediate defense was required under *Pancakes of Hawaii* and seeking reimbursement of such defense costs. According to Kiewit, it's too late now—over twelve years after reserving rights—for Island Insurance to seek declaratory relief and obtain reimbursement from Kiewit. Similarly, Kiewit also argues that Pacific Fence's failure to file a "compulsory counterclaim" in the *Arthur* litigation that specifically sought reimbursement of defense costs (although the amount was not yet known) also precludes Plaintiffs from seeking reimbursement now. Understanding the context for these and related questions

---

[6] The state circuit court later issued similar rulings based on *Pancakes of Hawaii* against Sato and Kiewit, finding that Sato and Kiewit had joint and several duties to defend KIC beginning in December 2005. *See Arthur I*, 135 Haw. at 165, 346 P.3d at 234 (discussing a May 27, 2011 order granting a motion for partial summary judgment brought by KIC). As discussed later, Sato challenged that ruling on appeal both to the Intermediate Court of Appeals and (ultimately, successfully) to the Hawaii Supreme Court.

requires the court to explain some of the other relevant coverage rulings from the *Arthur* litigation.[7]

## E.  State Court Proceedings Regarding Duties to Defend and Related Issues

### 1.  State Circuit Court Decisions

On December 3, 2009, the Arthurs filed a second amended complaint, adding punitive-damage allegations against KIC, but otherwise leaving the negligence claims unaltered against the DHHL, KIC, Design Partners, Coastal, and Sato.  *See Arthur II*, 138 Haw. at 87-88, 377 P.3d at 28-29; ECF No. 36-13 at PageID #845.  Given the new version of the complaint, KIC filed a new third-party complaint against Kiewit on April 1, 2010, reasserting its contribution, indemnification, and defense claims.  *See* ECF No. 50-8 at PageID #1444.  Kiewit followed with, among other pleadings, an April 16, 2010 fourth-party complaint against Pacific Fence that reasserted Kiewit's contribution, indemnification, and defense claims.  *See* ECF No. 50-9 at PageID #1467.  Likewise, Pacific Fence filed a new counterclaim against Kiewit, seeking contribution and indemnification (and, as before, not specifically seeking reimbursement of defense costs from Kiewit). *See* ECF No. 50-10 at PageID #1482.  Other parties also re-filed related

---

[7] Again, much more went on in the *Arthur* litigation.  The court here explains only enough to understand the issues raised in the current motions.

crossclaims regarding defenses against Pacific Fence. Island Insurance continued to defend Kiewit against the second amended complaint, and participated in the defense of others.

Some, if not all, of the defenses provided by Island Insurance were successful.[8] On September 16, 2010, the state circuit court granted a motion for partial summary judgment brought by Pacific Fence, determining that "there was no question of fact that in installing the fence in the Project, Pacific Fence did so to specifications, and therefore was neither negligent, nor acted wrongly nor breached its contract with Kiewit." *Arthur II*, 138 Haw. at 90, 377 P.3d at 31; *see also* S. Storm Decl. ¶ 5, ECF No. 36-3 at PageID #758. Similarly, on October 18, 2010, the state circuit court granted a motion for summary judgment brought by Kiewit, determining that Kiewit was not liable for damages to the Arthurs. *See* S. Storm Decl. ¶ 5, ECF No. 36-3 at PageID #758; ECF No. 36-20 at PageID #932.[9] Although the Arthurs had not brought direct claims against Kiewit and Pacific

---

[8] In addition to defending Kiewit and others, Island Insurance would have also been defending Pacific Fence (its insured) against any covered allegations of Pacific Fence's own potential liability in the *Arthur* litigation.

[9] The circuit court later also granted various motions for summary judgment in favor of the other *Arthur* defendants (the AOAO, KIC, Sato, and Design Partners), although those judgments were subsequently vacated in *Arthur I*. *See* 135 Haw. at 167-68, 346 P.3d at 236-67. No one, however, appealed the 2010 dismissals of Kiewit and Pacific Fence.

Fence, these orders (although not reduced to final judgment at the time) apparently resolved third- or fourth-party claims against them for contribution at that stage.[10]

On October 3, 2011, the state circuit court granted a motion brought by Kiewit to enforce the earlier August 8, 2007 order against Pacific Fence (i.e., the earlier order finding that Pacific Fence had a duty to defend Kiewit, KIC, DHHL, and Sato on a "pass through" theory). "This [October 3, 2011] order found that Kiewit's obligation to reimburse KIC and to make future payments for KIC's defense fees and costs passed through Kiewit as a matter of law to Pacific Fence." *Arthur I*, 135 Haw. at 166, 346 P.3d at 235. "The circuit court required Pacific Fence to reimburse KIC for the pro rata share of defense fees and costs allocated to Kiewit within the time period specified [in an earlier order]." *Id.* at 166, 346 P.3d at 235.

On April 2, 2013, the state circuit court issued an amended final judgment, *see* ECF No. 73-2 at PageID #2179, that, among other matters, allocated the parties' defense obligations as follows:

> 1) defense of DHHL, is jointly and severally owed by
> KIC, Coastal, Kiewit, and Pacific Fence; wherein KIC's
> obligation is owed jointly and severally by Coastal and

---

[10] On March 9, 2010 the Arthurs filed a motion for leave to file a third amended complaint, seeking to name Kiewit directly as a defendant, but the state circuit court denied that motion, and that denial was upheld on appeal. *See Arthur I*, 135 Haw. at 164, 346 P.3d at 238.

> Kiewit; and wherein any obligation of Kiewit is passed
> through to Pacific Fence;
>
> 2) defense of KIC, is jointly and severally owed by
> Design Partners, Sato, Coastal, Kiewit, and Pacific
> Fence; wherein Kiewit's obligation is passed through to
> Pacific Fence;
>
> 3) defense of Sato, which was tendered to and accepted
> by Kiewit, is passed through to Pacific Fence.

*Arthur II*, 138 Haw. at 90, 377 P.3d at 31 (internal footnote omitted).  And,

> With respect to KIC's defense expenses, the court
> apportioned costs among Kiewit, Coastal, Sato, Design
> Partners, and Pacific Fence for various periods from
> December 1, 2005 through April 30, 2011, taking into
> consideration the various dates of tenders of defense and
> relevant court orders.  The court did not apportion
> defense costs based on specific claims.

*Id.* at 90, 377 P.3d at 31; *see also* ECF No. 73-2 at PageID #2191-92.

### 2.    *The Hawaii Intermediate Court of Appeals Decides* Arthur I

Several appeals and cross-appeals were taken from the state circuit

court's April 3, 2013 amended judgment.[11]  On May 18, 2015, the Hawaii

---

[11] Meanwhile, on December 3, 2013, Pacific Fence was "dissolved administratively" by the Hawaii Department of Commerce and Consumer Affairs for failure to file reports or remit fees.  *See* ECF No. 41-7; ECF No. 1-1 at PageID #7 ("Pacific Fence is no longer in business, and was involuntarily dissolved on December 3, 2013.").  Pacific Fence was a small business, and at oral argument the parties represented that its principal had passed away.  Indeed, Pacific Fence may have ceased doing business as early as 2009.  *See* ECF No. 73-6 at PageID #2601 n.1 ("According to Pacific Fence's Settlement Conference Statement filed back on January 20, 2009, Pacific Fence as of that time had sold its assets and was no longer in business due to the death of

(continued . . .)

Intermediate Court of Appeals vacated the summary judgment orders that had been entered on the merits against the Arthurs, concluding that genuine issues of material fact existed such that "the circuit court erred by granting partial summary judgment to the AOAO, KIC, Sato, and Design Partners." *Arthur I*, 135 Haw. at 168, 346 P.3d at 237. It remanded the merits for further proceedings against those defendants. *Id.* at 179, 346 P.3d at 248.[12]

On a coverage issue, Pacific Fence challenged on appeal rulings that allowed KIC and Kiewit to "pass through" to Pacific Fence all their respective duties to defend KIC, Sato, and the DHHL. In its appellate brief, "Pacific Fence [did] not contest the circuit court's application of the complaint allegation rule to determine the duty to defend at the outset of litigation," *id.* at 174, 346 P.3d at 243, but, rather, argued that "it is improper to require a private indemnitor to defend both covered and non-covered claims like an insurer." *Id.* at 174, 346 P.3d at 243 (internal quotation marks omitted). It argued that "*Pancakes* did not require that an indemnitor be solely responsible for the defense of an indemnitee where there

_____

(. . . continued)
its principal George Aoki."). Nevertheless, Pacific Fence remained as a party in the *Arthur* litigation, presumably under authority of Hawaii Revised Statutes ("HRS") § 414-385(b)(6) ("Dissolution of a corporation does not . . . [a]bate or suspend a proceeding pending by or against the corporation on the effective date of dissolution").

[12] As noted earlier, no party appealed the 2010 orders granting summary judgment in favor of Kiewit and Pacific Fence.

are other indemnitors with concurrent obligations to defend or where the indemnitee itself is independently negligent." *Id.* at 174-75, 346 P.3d at 243-44.

The Intermediate Court of Appeals agreed with Pacific Fence's "pass through" arguments. *Arthur I* concluded that the Kiewit/Pacific Fence subcontract's indemnity provision "did not extend to Kiewit's liability unless it arose at least in part from Pacific Fence's work under their subcontract." *Id.* at 176, 346 P.3d at 245. Under the subcontract, "Pacific Fence assumed a duty to defend those whom Kiewit was obligated to defend under the Kiewit Contract, but only insofar as applicable to Pacific Fence's work." *Id.* at 176, 346 P.3d at 245. *Arthur I* concluded:

> Kiewit retained an independent duty to defend . . . KIC, DHHL, and Sato, and . . . this duty did not exclusively pass through to Pacific Fence. Therefore, Kiewit has an independent duty to defend DHHL and KIC and should contribute to defense costs of DHHL and KIC, as well as the cost of its own defense in the *Arthur* litigation.

*Id.* at 176, 346 P.3d at 245. Accordingly, *Arthur I* held that "Pacific Fence did not assume duties to defend Kiewit, KIC, Sato, and DHHL to the exclusion of these other parties' independent obligations to also contribute to defense costs." *Id.* at 176, 346 P.3d at 245. Even after *Arthur I*, however, Pacific Fence was still required to contribute jointly and severally to the defense of Kiewit, KIC, the DHHL, and Sato.

And on a cross-appeal by Sato—which will become important in its eventual application as to Pacific Fence—*Arthur I* rejected Sato's related argument that Sato should not have been required to defend KIC for *KIC's* alleged negligence or wilful misconduct. Sato argued that, because its hold harmless clause only required it to indemnify KIC for its own (i.e., Sato's) wrongdoing, it should not have to defend against KIC's sole wrongdoing. *Id.* at 170, 346 P.3d at 239. Sato argued that requiring it immediately to defend uncovered claims was contrary to public policy and Hawaii law set forth in HRS § 431:10-222, which specifically invalidates certain types of indemnity agreements used in the construction industry.[13] In making this argument, Sato went further than Pacific

---

[13] Section 431:10-222 provides:

> **Construction industry; indemnity agreements invalid.** Any covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance or appliance, including moving, demolition or excavation connected therewith, purporting to indemnify the promisee against liability for bodily injury to persons or damage to property *caused by or resulting from the sole negligence or wilful misconduct of the promisee, the promisee's agents or employees, or indemnitee, is invalid as against public policy,* and is void and unenforceable; provided that this section shall not affect any valid workers' compensation claim under chapter 386 or any other insurance contract or agreement issued by an admitted insurer upon any insurable interest under this code. (Emphasis added.)

Fence did—Sato specifically asked the Intermediate Court of Appeals to overrule or distinguish *Pancakes of Hawaii*.

Sato's arguments regarding *Pancakes of Hawaii*, however, failed before the Intermediate Court of Appeals. In this regard, *Arthur I* concluded:

> In sum, HRS § 431:10-222 restricts the scope of indemnification provisions in construction contracts, but it does not invalidate the application of the provision in the Sato Contract to Arthur's claims here, and Sato's duty to ultimately indemnify KIC and/or others is separate from its duty to defend. Under *Pancakes*, Sato's obligation to defend KIC extended to claims that fell outside the scope of Sato's duty to indemnify KIC. *Pancakes*, 85 Hawai'i at 291, 944 P.2d at 88. For these reasons, we conclude that the indemnification provision in the Sato Contract was not void under HRS § 431:10–222.

135 Haw. at 172, 346 P.3d at 241. Sato, however, sought certiorari on that issue, and the Hawaii Supreme Court agreed to review it. *See Arthur II*, 138 Haw. at 87, 377 P.3d at 28.

### 3. *The Hawaii Supreme Court Decides* **Arthur II**

*Arthur II* vacated *Arthur I* in part. Limited to the duty-to-indemnify and defend issues, *Arthur II* focused on the language of HRS § 431:10-222, and its legislative history, finding that both clearly indicate that any indemnity provision in a construction contract is void as against public policy if it requires an indemnitor (e.g., Sato or Pacific Fence) to indemnify an indemnitee (e.g., KIC or

Kiewit) for liability resulting from "an [indemnitee's] sole negligence or willful misconduct." 138 Haw. at 93, 377 P.3d at 34. The purpose of the statute was "to invalidate, as against public policy, the prevalent practice in the construction industry of causing contractors to assume liability for the negligence of others by contract." *Id.* at 93, 377 P.3d at 34 (quoting legislative history). The legislature was concerned about prohibitive costs to small contractors of obtaining broad and disproportionate insurance coverage, and a lack of bargaining power in the construction industry. *Id.* at 94, 377 P.3d at 35.

Next, *Arthur II* concluded that although "§ 431:10-222 and its predecessor . . . do not employ language prohibiting the imposition on contractors of a contractual duty to *defend* owners," nevertheless, "as a matter of law, claims that fall outside the scope of contractual indemnity do not trigger a promisor's duty to defend." *Id.* at 94, 377 P.3d at 35. It held:

> [B]ecause HRS § 431:10-222 voids as against public
> policy indemnification clauses in construction contracts
> between owners and contractors as to "liability for bodily
> injury to persons or damage to property caused by or
> resulting from the sole negligence or wilful misconduct
> of the promisee, the promisee's agents or employees, or
> indemnitee[s]," HRS § 431:10-222 also operates to
> invalidate defense clauses for that same subset of claims.

*Id.* at 95, 377 P.3d at 36. "[P]ursuant to HRS § 431:10-222, in the construction industry, a contractor is not contractually liable for the sole negligence or willful

misconduct of another, *or for the defense thereof*[.]"  *Id.* at 95, 377 P.3d at 36

(emphasis added).  Under the statute, "each party to a construction contract [is]

responsible for its [own] 'sole negligence or willful misconduct.'"  *Id.* at 97, 377

P.3d at 38.

   And, in the key holding for purposes of the present action, *Arthur II*

concluded that any duty to defend based on an indemnitor's *own* potential

wrongdoing (i.e., not based on an indemnitee's "sole negligence or willful

misconduct") is not determined at the outset of the underlying litigation.  It

reasoned that the "complaint allegation rule" does not apply because § 431:10-222

"clearly prohibits" a promisor in a construction contract "from being contractually

required to defend a promisee against 'liability . . . caused by or resulting from the

sole negligence or willful misconduct of the promisee."  *Id.* at 97, 377 P.3d at 38

(quoting the statute).  "[I]f the complaint allegation rule were to apply, it is

possible in a case where initial allegations were brought against multiple parties,

for example, that a promisor would be compelled to defend a promisee against

negligence claims where ultimate liability is attributed solely to the promisee."  *Id.*

at 97, 377 P.3d at 38.  Rather, *Arthur II* held:

> [W]ith respect to a duty to defend in a construction
> contract, the scope of a promisor's duty to defend is
> determined at the end of litigation.  HRS § 431:10-222

effectively renders coextensive the duties to indemnify
and defend in construction contracts.

*Id.* at 97, 377 P.3d at 38.

*Arthur II* did not overrule *Pancakes of Hawaii*, but it did clarify
Hawaii law by distinguishing it because *Pancakes of Hawaii* did not involve a
*construction* contract.  It reasoned that "the holding in *Pancakes* does not apply"
because "HRS § 431:10-222 makes clear that the legislature does not view all non-
insurance indemnity contracts the same."  *Id.* at 97, 377 P.3d at 38.  And *Arthur II*
specifically did not "determine whether *Pancakes* is applicable to all non-insurance
indemnity contracts."  *Id.* at 97 n.9, 377 P.3d at 38 n.9.

In short, Sato prevailed before the Hawaii Supreme Court.  Sato had
no duty to defend KIC at the outset of the *Arthur* litigation, and should not have
been defending it, as the trial court and *Arthur I* had incorrectly concluded.  To that
extent, *Arthur II* vacated *Arthur I*, and remanded to the state circuit court "for
further proceedings consistent with [the] opinion."  *Id.* at 97, 377 P.3d at 38.

### 4.    *Relevant Post-*Arthur II *rulings*

#### a.    Arthur II *applies to other indemnitors besides Sato*

Upon remand, on November 22, 2016, the state circuit court granted a
motion brought by *Arthur* co-defendant Coastal entitled "Motion for Partial
Summary Judgment on its Indemnity and Defense Duties to Defendants

Department of Hawaiian Homelands and Kamehameha Investment Corporation, and for Entry of a Final Judgment Under Rule 54(b)." ECF No. 36-26 at PageID #1089. Among other rulings, that November 22, 2016 order concluded that *Arthur II's* holdings as to Sato also "appl[ied] to the defense obligations of other indemnitors, such as Defendant Coastal." *Id.* at PageID #1092.[14] The state circuit court also found that "[*Arthur II's*] construction of HRS § 431:10-222 applies retroactively, and applies to similarly situated parties who come within the ambit of the statute." *Id.* at PageID #1093. Under that order, Coastal—like Sato— should not have been defending or contributing to defending KIC or the DHHL; the scope of any duty to defend would not be determined until the end of the litigation.

---

[14] Specifically, the state circuit court found that the following holdings from *Arthur II* applied "to the defense obligations of other indemnitors," ECF No. 36-26 at PageID #1092:

> (1) [HRS] § 431:10-222 renders invalid any provision in a construction contract requiring the promisor to defend "the promise against liability for bodily injury to persons or damage to property caused by or resulting from the sole negligence or willful misconduct of the promisee, the promisee's agents or employees, or indemnitee";
>
> (2) [*Pancakes of Hawaii*], 85 Hawaii 286, 944 P.2d 83 (App. 1997), does not apply to defense provisions in construction contracts; and
>
> (3) the scope of a promisor's duty to defend that is imposed by a construction contract is determined at the end of litigation.

*Id.* at PageID #1091-92.

b.     Arthur II *also applies to Pacific Fence*

Following the November 22, 2016 Order, Pacific Fence filed an

omnibus motion on June 21, 2017, seeking, among other matters, the same relief

that Coastal had obtained—that is, a ruling declaring that *Arthur II's* holdings

applied equally to Pacific Fence such that Pacific Fence did not have a duty to

defend Kiewit and others in the *Arthur* litigation.  It argued that any such duty

would have been determined at "the end of litigation" (and, at that point, where it

had been determined to have no duty to indemnify Kiewit).  *See* ECF No. 73-2 at

PageID #1917-20.  Pacific Fence also sought reimbursement of all defense costs

and expenses that it had incurred in defending Kiewit, KIC, DHHL and Sato.  *See*

*id.* at PageID #1911.

The DHHL, KIC and Kiewit opposed Pacific Fence's request for

reimbursement on several grounds.[15]  The DHHL argued, among other grounds,

that (1) *Arthur II* should not be applied retroactively, (2) Hawaii law does not

allow reimbursement of defense costs as a matter of law, and (3) Pacific Fence was

not the real party in interest for reimbursement because Island Insurance—which

---

[15] Sato also opposed the reimbursement request, but only on the ground that Island had insufficient documentation of the amount of costs it was seeking.  *See* ECF No. 73-7 at PageID #2620.

was not a party to the *Arthur* litigation—actually incurred the expenses (not Pacific Fence). *See* ECF No. 73-4 at PageID #2315.

For its part, KIC pointed out that Pacific Fence had previously never disputed that it had a duty to defend at the outset of *Arthur*, and had only objected to defending both covered and uncovered claims—an issue on which Pacific Fence prevailed before the Intermediate Court of Appeals in *Arthur I*. Further, given that Pacific Fence did not participate in subsequent proceedings before the Hawaii Supreme Court (which were brought by Sato), KIC contended that Pacific Fence was bound by *Arthur I's* decision regarding Pacific Fence's duties. *See* ECF No. 73-5 at PageID #2441-44. KIC also argued that Pacific Fence was not the real party in interest for any reimbursement claim, taking the position that "[t]o the extent that Island has some right to recover fees from parties for whom it paid legal expenses, Island must file its own action." *Id.* at PageID #2446.

Kiewit opposed reimbursement as well, pointing out that Pacific Fence had not even pled such a claim in Pacific Fence's counterclaim against Kiewit. ECF No. 73-6 at PageID #2600.[16] Like the others, it also argued that, because Island Insurance (not Pacific Fence) incurred the defense costs, Pacific

---

[16] KIC joined in this specific argument. *See* ECF No. 73-9 at PageID #2633 ("Pacific Fence's Cross-Claims against KIC did not alleged a claim for 'reimbursement.' Like its Counterclaim against Kiewit, Pacific Fence's Cross-Claims against KIC alleged claims for implied indemnity and contribution.").

Fence had no basis to seek reimbursement. *See id.* at PageID #2601. It contended

that "[i]n order for Island Insurance to pursue its own recovery, it should have

instituted an independent action filed by its own counsel on its own behalf." *Id.* at

PageID #2603. But Kiewit argued that it was too late for Island Insurance to do so:

> Island Insurance could have initiated an independent
> declaratory relief action to determine if it had an ongoing
> duty to defend at any time during the ten years that it
> agreed to provide a defense to Kiewit and others. Having
> failed to do so, Island Insurance is estopped and has no
> right to reimbursement even if it were to bring a separate
> action in its own name under Hawaii law.

ECF No. 73-6 at PageID #2603; *see also id.* at 2606 (arguing that "Island

Insurance cannot protect its own interest by agreeing to defend Kiewit before any

judicial determination of coverage and then fail to pursue a declaratory relief

action for ten years, only to unilaterally claim that it has a right to reimbursement

of the defense fees and costs that it voluntarily paid during that entire time

period"). Kiewit also argued that it was premature to determine Pacific Fence's

defense obligations because the litigation was not over, and, under *Arthur II*, the

duty to defend is not decided until the "end of litigation." Finally, Kiewit

maintained that reimbursement was barred as a matter of law, reasoning that no

Hawaii appellate court had recognized the right of an insurer to obtain

reimbursement of defense costs. *See id.* at PageID #2604-05 (citing non-Hawaii

cases that disallow reimbursement to an insurer from an insured).

On October 10, 2017, the state circuit court filed a written order

(signed on October 9, 2017) granting in part and denying in part Pacific Fence's

June 21, 2017 omnibus motion. In relevant part, the court ruled as follows:

> 1. *Pacific Fence's Motion for Partial Summary Judgment on its contractual duties to defend and indemnify [Kiewit, KIC, the DHHL, and Sato] is GRANTED.*
>
> 2. Pacific Fence's Motion for Partial Summary Judgment on All Claims of Contribution and Equitable Indemnification is GRANTED.
>
> 3. Pacific Fence's Motion to Dismiss the cross-claims for defense and indemnity asserted by [Sato] is GRANTED.
> . . . .
> 5. *Pacific Fence's Motion for Reimbursement of Costs of Defense and Attorney's Fees is DENIED without prejudice. The Court finds that there is currently no properly asserted reimbursement claim before it.*

ECF No. 36-27 at PageID #1100-01 (emphases added). Under this October 9,

2017 order, Pacific Fence had no duty to defend Kiewit and others—just as Sato

and Coastal had no immediate duties to defend KIC and the DHHL as decided in

*Arthur II* and in the state circuit court's November 22, 2016 order.[17]  At that point

(if not earlier), it appears clear that Pacific Fence had no possible indemnification

obligations to Kiewit, and thus had no defense obligations either (as determined at

the "end of litigation" under *Arthur II*).

///

///

_____

[17] This reading also follows from the state circuit court's August 4, 2017 minute order, which ruled on Pacific Fence's motion after a July 5, 2017 hearing.  Regarding Pacific Fence's motion as to its duties to defend and indemnify Kiewit, KIC, the DHHL, and Sato, the minute order stated:

> The motion is granted.  The court both agrees with, and follows as law of the case, Judge Nakasone's 11/22/16 order regarding Coastal [Construction's] MPSJ . . . which essentially decided the same issue.

As to Pacific Fence's "MPSJ on all Claims of Contribution and Equitable Indemnification," the minute order stated:

> Again, the court both agrees with, and follows as law of the case, Judge Nakasone's 11/22/16 order on contractual duties.  As described in Judge Nakasone's 11/22/16 ruling, the Hawaii Supreme Court opinion [*Arthur II*] is applicable and determinative.

And as to Pacific Fence's Request for Entry of Final Judgment, the minute order stated:

> This motion is granted.  Since Pacific Fence was found not liable, there is no contractual duty to defend or indemnify under the Hawaii Supreme Court's decision [*Arthur II*], and for the same reasons, no right of equitable indemnification or contribution.

The minutes, however, were later amended to reflect that Pacific Fence had orally withdrawn its Rule 54(b) request.  (Docket available at eCourt kokua, https://www.courts.state.hi.us/legal_references/records/ (last visited, Jan. 21, 2020)).

### c.    *An October 10, 2017 Judgment in Favor of Kiewit*

The state circuit court was considering Pacific Fence's June 21, 2017
omnibus motion in conjunction with a related motion brought earlier by Kiewit on
April 17, 2017.  *See* ECF No. 73-10.  Kiewit had filed that motion primarily "to
confirm that there are in fact no claims remaining against Kiewit for the upcoming
September 2017 trial" which was then pending against remaining *Arthur*
defendants after *Arthur I's* remand on the merits.  *Id.* at PageID #2647.  Because
trial was upcoming and because Island Insurance was apparently no longer
defending Kiewit (given *Arthur II*), Kiewit sought entry of judgment in its favor
under Rule 54(b).  *See id.* at PageID #2648.  Kiewit looked back to October 18,
2010, where Kiewit (through counsel retained by Island Insurance) had obtained a
summary judgment order determining that Kiewit was not liable for any damages
to the Arthurs, *see* ECF No. 36-20 at PageID #932, and that order had not been
appealed.  Thus, Kiewit sought a Rule 54(b) judgment on all claims against it to
confirm that "[the Arthurs] have no direct claims against Kiewit remaining in this
case."  ECF No. 73-10 at PageID #2646.  And Kiewit recognized that Pacific
Fence had obtained a similar order in 2010 regarding Pacific's Fence's lack of
liability for the death of Mona Arthur, and noted that "if a final judgment is entered
in favor of Kiewit on all claims, then any remaining claims in [] Kiewit's Fourth-

Party Complaint against Pacific Fence and Pacific Fence's Counterclaim against

Kiewit should also be dismissed as moot." *Id.* at PageID #2647 n.3.[18]

Accordingly, on October 10, 2017, the state circuit court issued a

"Final Judgment in Favor of Third-Party Defendant/Fourth-Party Plaintiff Kiewit

Pacific Co.," ECF No. 36-28.  The Rule 54(b) judgment stated that it was issued

"pursuant to the *Order Granting Third-Party Defendant and Fourth-Party Plaintiff*

*Kiewit Pacific Co.'s Motion for Summary Judgment, Filed Herein on May 17,*

*2010, Filed October 18, 2010.*"  *Id.* at PageID #1108 (emphasis in original).  It

entered judgment on third-party claims or crossclaims made against Kiewit by

KIC, the DHHL, the AOAO, and Sato.  *Id.*  As to Pacific Fence, it entered

judgment:

> in favor of Kiewit and against Pacific Fence on Fourth-
> Party Defendant Pacific Fence, Inc.'s Counterclaim
> Against Third-Party Defendant and Fourth-Party Plaintiff
> Kiewit Pacific Co. filed April 29, 2010[.]

*Id.*  It then included the following language (the meaning of which Kiewit disputes

in analyzing the pending motions between Plaintiffs and Kiewit):

---

[18] Kiewit's April 27, 2017 motion was not opposed, although KIC and the DHHL filed statements explaining their positions.  *See* ECF Nos. 73-12 & 73-14.  The briefing did not focus on duty-to-defend issues regarding Pacific Fence, but in their filings KIC and Kiewit discussed the scope of any remaining claims that *KIC* might have had for reimbursement of defense costs. *See* ECF No. 73-12.

> **No Other Claims.** Plaintiffs [Arthurs], [Design
> Partners], and [Coastal] have not asserted any claims
> against Kiewit in this case. *The foregoing judgments
> adjudicate all of the claims asserted against Kiewit by
> any or all of the other parties to this action;* provided,
> that this Final Judgment does not determine or prejudice
> any right KIC has to seek reimbursement from Kiewit for
> any legal expenses KIC has related to the tender of
> defense.
> It is the Judgment of this Court that *all other
> claims, cross-claims, counterclaims, and fourth-party
> claims asserted by Kiewit* against DHHL, KIC,
> Association, Sato, Miyasato, DPI, Coastal, *and Pacific
> Fence shall be moot and are hereby dismissed.*

*Id.* at PageID #1109 (emphases added).

On October 17, 2017, the state circuit court formally granted a motion

to withdraw as co-counsel brought in April 2017 by Cary Tanaka, who had been

retained by Island Insurance to defend Kiewit in the *Arthur* litigation. *See* Civ. No.

05-1-1981-11 (Haw. 1st Cir. Ct.) (docket available at eCourt kokua,

https://www.courts.state.hi.us/legal_references/records/ (last visited, Jan. 21,

2020)).

The state circuit court *Arthur* docket reflects that the remaining parties

settled with the Arthurs prior to trial. Various stipulations to dismiss were filed in

June of 2018, and the case was terminated. *See* Civ. No. 05-1-1981-11 (Haw. 1st

Cir. Ct.) (docket available at eCourt kokua, https://www.courts.state.hi.us/

legal_references/records/ (last visited, Jan. 21, 2020)).

**F.      Procedural History in This Court**

Plaintiffs filed this declaratory relief action on February 28, 2018 in the First Circuit Court for the State of Hawaii, ECF No. 1-1, seeking declaratory relief and reimbursement of costs incurred in defending Kiewit in the *Arthur* litigation.  On March 21, 2018, Kiewit removed the action to federal court based on diversity of citizenship under 28 U.S.C. § 1332.  ECF No. 1.  As alleged in the notice of removal, complete diversity exists because Plaintiffs are Hawaii citizens—Pacific Fence is a dissolved Hawaii corporation, and Island Insurance is a Hawaii corporation with a principal place of business in Honolulu—and Kiewit is a Delaware corporation with a principal place of business in Nebraska.  *Id.* at PageID #3. Well over $75,000 is in controversy as Plaintiffs are seeking reimbursement of over $213,000 in defense fees and costs.  *Id.*

On March 27, 2018, Kiewit answered and filed a counterclaim with counts for declaratory relief and bad faith.  ECF No. 7-1.  On April 17, 2018, Plaintiffs moved to remand the action to state court but this court eventually denied that motion.  *See* ECF Nos. 15, 23.

On March 4, 2019, Plaintiffs filed their Motion for Partial Summary Judgment, seeking a declaration that they owed no duty to defend Kiewit.  ECF No. 36.  Kiewit opposed, and filed a countermotion for partial summary judgment

on April 26, 2019, seeking a declaration that it was owed a defense, as well as dismissal of Plaintiffs' claim for reimbursement. ECF No. 40; *see also* ECF No. 57 (amended countermotion, correcting minor formatting errors in the original countermotion but seeking identical relief). On May 15, 2019, Kiewit followed its countermotion with two similar motions for summary judgment, raising the same issues, but with individual motions directed specifically at each Plaintiff. *See* ECF No. 49 (motion directed at Pacific Fence); ECF No. 51 (motion directed at Island Insurance).

The court held a hearing on the motions on July 19, 2019, ECF No. 66, and later directed Kiewit to supplement the record with certain filings from the *Arthur* litigation as needed to help understand prior state-court proceedings. ECF No. 72. Kiewit filed the supplemental material on October 29, 2019. ECF No. 73.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences in the

light most favorable to the nonmoving party. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1184 (9th Cir. 2016).

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South,* 965 F.2d 1532, 1536 (9th Cir. 1992)). And so a Plaintiff moving for summary judgment on an affirmative claim "must establish beyond peradventure *all* of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Put another way, "[its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 488 (1984)).

## IV. <u>DISCUSSION</u>

The court first addresses Kiewit's various defenses. Next, because Kiewit's arguments mostly fail, the court addresses Plaintiffs' motion seeking a declaration that Plaintiffs had no duty to defend Kiewit such that they (or only

Island Insurance) may seek reimbursement of defense costs incurred defending Kiewit in the *Arthur* litigation.

Both Kiewit's Amended Countermotion for Summary Judgment, ECF No. 57, and Kiewit's "Motion for Summary Judgment Against Plaintiff GGA, Inc. dba Pacific Fence," ECF No. 49, raise multiple, alternative arguments seeking summary judgment and dismissal of Pacific Fence as a Plaintiff. Specifically, Kiewit argues that Pacific Fence's claims fail because (1) Pacific Fence lacks standing to seek reimbursement; (2) Pacific Fence failed to file a compulsory counterclaim in the *Arthur* litigation, and (3) its claims are barred by judicial estoppel and res judicata.[19]

## A. Summary Judgment is Entered in Favor of Kiewit and Against Pacific Fence for Lack of Standing

As noted earlier, Pacific Fence was administratively dissolved as a corporation in 2013 after ceasing to do business, apparently in 2009. *See* ECF No. 73-6 at PageID #2601. Its authority to bring the current action as a dissolved

---

[19] To be clear, these arguments are directed specifically at Pacific Fence (not Island Insurance). Nevertheless, Kiewit also raises the same grounds when seeking summary judgment as to Island Insurance. *See* ECF No. 51-1 at PageID #1574 (arguing that "[A]ny defenses to Pacific Fence's claim also bars Island's claim [and so] Kiewit incorporates by reference the arguments and law presented in Kiewit's Motion for Summary Judgment against [Pacific Fence]"). Because the court grants summary judgment in favor of Kiewit against Pacific Fence based on a lack of standing, it discusses the *other* grounds as necessary later when separately addressing defenses against Island Insurance's claims.

corporation is unclear. Hawaii law allows a dissolved corporation to "collect its assets" as part of winding up its affairs, but Plaintiffs have not argued (much less established) such a theory here. *See, e.g.*, HRS § 414-385(a) ("A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including: (1) Collecting its assets; . . . and (5) Doing every other act necessary to wind up and liquidate its business and affairs."). Another provision of Hawaii law indicates that Pacific Fence's dissolution would not necessarily prevent it from bringing an action "in its corporate name." *See* HRS § 414-385(b) (providing that dissolution of a corporation does not . . . (5) Prevent commencement of a proceeding by or against the corporation in its corporate name").

Nevertheless, whatever theory might have justified Pacific Fence being named as a Plaintiff, Plaintiffs (both in their opposition, and at the hearing on the motions) effectively conceded that Pacific Fence should be dismissed. *See, e.g.*, ECF No. 58 at PageID #1712 (Plaintiffs' opposition acknowledging that "the naming of Pacific Fence in this action was done for identification purposes only");

*id.* at PageID #1713 ("Island Insurance does not dispute that Pacific Fence, as a creature of corporation law, likely has no standing[.]").[20]

More importantly, regardless of such concessions, nothing in the record indicates that Pacific Fence itself ever expended any costs or fees defending Kiewit. As Plaintiffs acknowledge—and as the DHHL, KIC and Kiewit argued to the state circuit court in 2017—there is nothing to be reimbursed to Pacific Fence because it did not spend anything. *See, e.g.*, ECF No. 58 at PageID #1712-13 (Plaintiffs' opposition stating that "[a]t no time has it ever been suggested that Pacific Fence was entitled to reimbursement of attorneys' fees paid by Island Insurance. Instead, and as pointed out by Kiewit, Island Insurance recognizes that its right to reimbursement 'flows' from its own insurer-insured relationship with Pacific Fence"). Pacific Fence did not actually defend Kiewit much less reserve any rights from Kiewit—Island Insurance did.

It follows that, because Pacific Fence lost nothing and suffered no "injury in fact," Pacific Fence has no standing to seek reimbursement. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992) (requiring, among other elements, a plaintiff to have suffered an "injury in fact," i.e., an "invasion of a legally protected

---

[20] Island Insurance, however, denies that dismissal of Pacific Fence precludes Island Insurance from seeking reimbursement from Kiewit. *See* ECF No. 58 at PageID #1713-14.

interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical") (citations and internal quotation marks omitted). To that extent, Kiewit's counter-motion as to Pacific Fence, ECF No. 57, and motion for summary judgment against Pacific Fence, ECF No. 49, are GRANTED. That is, the court GRANTS summary judgment against Pacific Fence in favor of Kiewit, and DISMISSES Pacific Fence as a plaintiff in this action.

**B.     Island Insurance Has Standing and Kiewit's Other Defenses Fail**

The real questions are whether the dismissal of Pacific Fence also prevents Island Insurance from bringing this action, and, if not, whether Kiewit's defenses otherwise prevent Island Insurance from seeking reimbursement. For reasons explained to follow, the answer to both questions is no.

**1.     *Standing of Island Insurance***

Kiewit argues that Pacific Fence's dismissal and dissolution prevents Island Insurance from seeking reimbursement, as Island Insurance has itself purportedly acknowledged by stating that any reimbursement rights "flow from" Pacific Fence. *See* ECF No. 57-1 at PageID #1693-94. But this argument appears to be based on the false premise that Pacific Fence was actually incurring expenses defending Kiewit, and that therefore Island Insurance would be limited to being reimbursed from Pacific Fence. As set forth above, however, Pacific Fence

incurred no expenses, and lacks standing to seek reimbursement.  Island Insurance,

on the other hand, defended Kiewit by hiring defense counsel and—according to

the complaint—spent over $213,000 in defense costs.  *See* ECF No. 1-1 at Page ID

#9.  It has standing to seek to enforce its reservation-of-rights letter.  Moreover,

Kiewit's refusal (whether valid or not) to reimburse defense costs creates an

"actual controversy" for purposes of this declaratory relief action under either HRS

§ 632-1 (providing a declaratory relief remedy under state law) or 28 U.S.C.

§ 2201 (same under federal law).[21]

### 2.     *Kiewit's Other Defenses*

#### a.     *Lack of a Compulsory Counterclaim in the* Arthur *litigation*

Kiewit argues that a reimbursement claim was a compulsory

counterclaim in the *Arthur* litigation and, having not been brought, is barred under

Hawaii Rule of Civil Procedure 13(a), which provides:

> A pleading shall state as a counterclaim any claim which
> at the time of serving the pleading the pleader has against

---

[21] *See, e.g.*, *Tri-S Corp. v. W. World Ins. Co.*, 110 Haw. 473, 490 n.7, 135 P.3d 82, 99 n.7 (2006) ("Tri-S has showed that it suffered financial injury (i.e., the payment of Taft's attorney's fees) that is fairly traceable to WWI's failure to defend Taft in the underlying action . . . . Accordingly, Tri-S has a stake in the outcome of this case such as to give it standing."); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (en banc) ("A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution.") (citation omitted); *cf. id.* at 1222 n.2 ("[W]e have consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement.").

> any opposing party, if it arises out of the transaction or
> occurrence that is the subject matter of the opposing
> party's claim and does not require for its adjudication the
> presence of third parties of whom the court cannot
> acquire jurisdiction.

Haw. R. Civ. P. 13(a). *See, e.g.*, *Bailey v. State*, 57 Haw. 144, 148, 552 P.2d 365, 369 (1976) ("[W]here a defendant has had the opportunity but has failed to assert a compulsory counterclaim in an action, Rule 13(a) estops him from asserting such claim in a subsequent action."); *JPMorgan Chase Bank, N.A. v. Moniz*, 2016 WL 6433841, at *4 (D. Haw. Oct. 25, 2016) (applying Haw. R. Civ. P. 13(a) to bar a subsequent claim in federal court).

Hawaii law applies a "logical relationship" test to determine whether two claims arise out of the same "transaction or occurrence." *See Booth v. Lewis*, 8 Haw. App. 249, 252-53, 798 P.2d 447, 449 (1990). "Under Hawaii law, a counterclaim is compulsory if there is a logical relation between the original claim and the counterclaim—i.e., it arises out of the same aggregate of operative facts as the original claim." *E. Sav. Bank, FSB v. Esteban*, 129 Haw. 154, 161 n.13, 296 P.3d 1062, 1069 n.13 (2013) (citing Haw. R. Civ. P. 13(a)).

But even assuming a counterclaim for reimbursement by Pacific Fence against Kiewit might have had a "logical relationship" with Kiewit's claim for indemnification and a defense against Pacific Fence, the argument fails as to

*Island Insurance* because Island Insurance was not a party to the *Arthur* litigation. Without more, Island Insurance could not have filed a claim for reimbursement. Indeed, when Pacific Fence was—improperly, given its lack of standing—seeking reimbursement in June 2017 in the state circuit court, KIC argued that Island Insurance needed to file its own action. Island Insurance did just that by filing the present action for declaratory relief. Moreover, in its October 9, 2017 order on Pacific Fence's omnibus motion, the state circuit court did not *preclude* reimbursement even though it recognized that "there is currently no properly asserted reimbursement claim before it," ECF No. 36-27 at PageID #1101. Rather, it denied Pacific Fence's reimbursement request "without prejudice." *Id.*

In short, this argument does not preclude Island Insurance from seeking reimbursement.

> b. *Judicial Estoppel*

Next, Kiewit repeats an argument made to the state circuit court that judicial estoppel prevents reimbursement because Plaintiffs (Pacific Fence at that time) materially changed positions in the *Arthur* litigation.[22]

---

[22] Again, Kiewit argues that defenses as to Pacific Fence also necessarily bar Island Insurance's claims, ECF No. 51-1 at PageID #1574. Thus, in the next three sections, the court sometimes refers to Kiewit's defenses against "Plaintiffs'" claims, even though they are applicable here only as to Island Insurance.

The Supreme Court describes the judicial estoppel doctrine as follows:

> [w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). The rule "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). It is "an equitable doctrine invoked by a court at its discretion." *Id.* at 750 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

Kiewit argues that Plaintiffs (1) acknowledged an immediate duty to defend under the "complaint allegation" rule and *Pancakes of Hawaii*, (2) only argued that Pacific Fence (and thus Island Insurance) should not have to defend uncovered claims under a "pass through" theory, and (3) specifically represented to the Hawaii Intermediate Court of Appeals in *Arthur I* that Pacific Fence was not contesting that it had an immediate duty to defend, a representation purportedly relied upon by the appellate court. Plaintiffs have now changed positions, arguing

that they had no duty to defend, or at least that the duty does not arise immediately but, rather, is determined at the end of the litigation.

But Plaintiffs' position only changed after *Arthur II* announced the new rule that, with an indemnity provision in a construction contract, a duty to defend is not determined until the end of the litigation. Even if Plaintiffs did not advocate for that position, they are not judicially estopped from raising and benefitting from the change in controlling law. *See Maui Land & Pineapple Co. v. Occidental Chem. Corp.*, 24 F. Supp. 2d 1083, 1086 (D. Haw. 1998) (explaining that the application of judicial estoppel is "inappropriate when a party is merely changing its position in response to a change in the law") (citing *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984)); *Biomedical Patent Mgmt. Corp. v. Cal. Dept. of Health Servs.*, 505 F.3d 1328, 1342 (Fed. Cir. 2007) ("[Defendant] is not judicially estopped from asserting a new position that resulted from a change in the law.") (applying Ninth Circuit law after citing *Maui Land & Pineapple*); *Saleh v. Bush*, 848 F.3d 880, 887 (9th Cir. 2017) ("[T]he new position rests on an intervening change in law and therefore is not subject to judicial estoppel.") (citing *Longaberger Co. v. Kolt*, 586 F.3d 459, 470 (6th Cir. 2009) (collecting cases), *abrogated on other grounds* by *Montanile v. Bd. of Trs. of Nat'l*

*Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651 (2016)).  In short, judicial

estoppel does not apply.

       c.     *Res Judicata/Claim Preclusion*[23]

       Similar to its compulsory-counterclaim argument, Kiewit also argues

that Plaintiffs' claims are barred by res judicata or "claim preclusion" because

Pacific Fence (and thus Island Insurance which, Kiewit argues, was in "privity"

with Pacific Fence) could have sought reimbursement in the *Arthur* litigation but

did not.  *See Bremer*, 104 Haw. at 53, 85 P.3d at 160 (explaining that claim

preclusion includes not only "issues [that] were actually litigated in the first action,

but also . . . all grounds of claim and defense which might have been properly

litigated in the first action but were not litigated or decided") (quoting *Foytik v.

Chandler*, 88 Haw. 307, 314, 966 P.2d 619, 626 (1998) (emphasis omitted)).

       This court looks to Hawaii law to determine the preclusive effect of a

Hawaii judgment.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75,

81 (1984) ("It is now settled that a federal court must give to a state-court

judgment the same preclusive effect as would be given that judgment under the law

of the State in which the judgment was rendered.").  Under Hawaii law, Kiewit has

---

[23] Hawaii law prefers the modern term "claim preclusion" instead of "res judicata."  *See Bremer v. Weeks*, 104 Haw. 43, 53 n.14, 85 P.3d 150, 160 n.14 (2004).

"the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented [or could have been presented] in the action in question." *Bremer*, 104 Haw. at 54, 85 P.3d at 161.

Kiewit points to its October 10, 2017 Rule 54(b) judgment which was issued "in favor of Kiewit and against Pacific Fence on [Pacific Fence's] Counterclaim Against [Kiewit]," and which "adjudicate[d] all of the claims asserted against Kiewit by any or all of the other parties to this action." ECF No. 36-28 at PageID #1108-09. Kiewit argues that this is a final judgment on the merits, involved the same parties or those in privity, and adjudicated the issues that are the same or could have been properly raised and decided in the *Arthur* litigation. Under this judgment, so the argument goes, Kiewit prevailed on its claim seeking a defense from Pacific Fence and cannot challenge that ruling here.

But Kiewit's claim-preclusion argument is double-edged and if anything cuts *against* Kiewit, in favor of Island Insurance. As described earlier, the state circuit court issued Kiewit's October 10, 2017 judgment based specifically on an earlier October 18, 2010 order that concluded that Kiewit had no liability (whether for contribution or otherwise) for harm to the Arthurs. The

judgment was issued to confirm that Kiewit was out of the case and need not participate in the upcoming 2017 trial by the Arthurs against other remaining defendants. And because Pacific Fence also had no liability for harm to the Arthurs (based on an earlier September 16, 2010 order) there was no possibility that Kiewit could have any liability for contribution or indemnity to Pacific Fence for harm to the Arthurs. And so, just as Kiewit had noted in its motion to the state circuit court, the October 10, 2017 judgment determined that "fourth-party claims asserted by . . . Pacific Fence shall be moot and are hereby dismissed." ECF No. 36-28 at PageID #1109. Although the Rule 54(b) judgment stated that it was "in favor of Kiewit and against Pacific Fence," there is no indication that this judgment meant that Pacific Fence must *defend* Kiewit.

To the contrary, a different state circuit court order, signed a day earlier on October 9, 2017 regarding Pacific Fence's concomitant omnibus motion, found exactly the opposite—it specifically determined that Pacific Fence had *no* duty to defend Kiewit. ECF No. 36-27 at PageID #1100.[24] In so doing, the state circuit court faced and rejected almost every argument that Kiewit now raises before this court. If anything, the state circuit court's October 9, 2017 order

---

[24] Contrary to Kiewit's argument, it is not significant that the Pacific Fence order signed on October 9, 2017 was actually filed three minutes after the Kiewit Rule 54(b) judgment was entered on October 10, 2017. Essentially, they were filed together, with complimentary rulings.

specifically ruling in *favor* of Pacific Fence on the duty-to-defend question is

entitled to res judicata effect and precludes *Kiewit* from arguing otherwise.[25]

### d.    Statute of Limitations

Next, Kiewit argues that Island Insurance's request for declaratory

relief and reimbursement is time-barred because Island Insurance failed to seek

such relief for nearly twelve years after it began defending Kiewit in May 2006.

According to Kiewit, Island Insurance should have filed a declaratory relief action

within a reasonable time after it issued the May 4, 2006 reservation-of-rights letter,

and its failure to do so bars it from seeking relief now.   Kiewit argues that:

> Island, for example, could have sought to overturn
> *Pancakes* or argued that it had no current obligation to
> defend Kiewit under the insured contract exception to the
> contractual liability exclusion to its policy.  Island instead
> chose to retain and pay its own panel counsel, not
> Kiewit's counsel, in order to control the defense of
> Kiewit for a decade and opportunistically sought to

---

[25] The October 9, 2017 order was apparently never reduced to a judgment (the *Arthur* docket reflects that Pacific Fence withdrew its June 2017 request for a Rule 54(b) judgment), leading to some uncertainty whether the first element of the claim-preclusion test is met to be able to apply the doctrine against Kiewit.  *See Bremer*, 104 Haw. at 54, 85 P.3d at 161 (requiring "a final judgment on the merits" for claim preclusion to apply).  Nevertheless, the *Arthur* docket has been closed for over a year, given stipulations to dismiss the remaining *Arthur* defendants in 2018.  In practical effect, the October 9, 2017 order is final.  In any event, as discussed to follow, *Kiewit's* Rule 54(b) judgment—which is certainly final—establishes that Pacific Fence has no duty to indemnify Kiewit and so, under *Arthur II* (determining the duty to defend "at the end of the litigation") Pacific Fence has no corresponding duty to defend.  Thus, the court need not rely on res judicata to rule in favor of Island Insurance, and it addresses each of Kiewit's defenses on their merits.

capitalize on a holding that its own insured Pacific Fence
advocated against in the same action.

ECF No. 51-1 at PageID #1577.

Initially, the court rejects Kiewit's arguments that Island Insurance
was motivated to "control the defense of Kiewit for a decade," and is now
improperly taking a position "that its own insured Pacific Fence advocated against
in the same action." *Id.* The record reflects that Island Insurance hired
independent counsel (Cary Tanaka) to defend Kiewit, and absolutely nothing in the
current record suggests that Island Insurance improperly controlled that counsel
(and certainly no more than Kiewit's own CGL carrier might have). Although
retained by Island Insurance, that counsel represented Kiewit—not Island
Insurance—with duties owed to Kiewit to account for Kiewit's interest's only. *See
Finley v. Home Ins. Co.*, 90 Haw. 25, 33, 975 P.2d 1145, 1153 (1998) (rejecting
the position that retained counsel engages in "dual representation"). Nothing
indicates that Island Insurance interfered with Tanaka's representation of Kiewit,
or somehow coordinated (or refrained from coordinating) a position regarding
Island Insurance's coverage duties. *See id.* (reiterating that an insurer may not
interfere with a retained attorney's professional judgment). Indeed, retained
counsel successfully defended Kiewit, obtaining a binding order finding Kiewit
had no liability for possible damages to the Arthurs.

With 20/20 hindsight, especially given that Sato eventually prevailed in *Arthur II*, it may be that Island Insurance could have taken a more aggressive position and—instead of acknowledging under the "complaint allegation" rule that it should defend Kiewit because of the potential for liability on the part of its insured, Pacific Fence—formally challenged the nature of its (and Pacific Fence's) duty to defend by filing a separate declaratory relief action at that time. But, again, given the nature of Hawaii law at the time, a decision through experienced coverage counsel to provide coverage while reserving rights seems to have been both sensible and pragmatic.[26] Somewhat ironically, a less conservative position by Island Insurance might have been to Kiewit's detriment, and might have invited a bad faith suit by Pacific Fence against Island Insurance or a breach-of-contract claim by Kiewit against Pacific Fence.

In any event, it is unclear what an earlier declaratory relief action would have accomplished. As Island Insurance points out, the legal questions regarding *Pancakes of Hawaii* and defense duties in construction contracts under

---

[26] Island Insurance owed different duties to its insured, Pacific Fence, than it owed to Kiewit (which was only owed contractual duties from Pacific Fence). Under Kiewit's theory, if Island Insurance had filed a declaratory relief action at that time against Kiewit, it appears that it would also have been required to name its own insured, Pacific Fence, as a defendant. This may have been necessary to argue that the Kiewit/Pacific Fence subcontract's indemnity provision was void under HRS § 431:10-222 and thus was not a covered "insured contract" such that Island Insurance owed no duty to indemnify Pacific Fence. This issue might also have factored into a decision whether to file a declaratory relief action.

HRS § 431-10-222 were already being litigated in the *Arthur* litigation itself.  And

for that reason, a separate declaratory relief action might (or might not) simply

have been stayed to prevent duplicative litigation.  *See, e.g.*, *Burlington Ins. Co.*,

758 F. Supp. 2d at 1133 (staying declaratory relief action seeking a ruling

regarding reimbursement of costs in an ongoing action).  And a damages claim for

reimbursement of defense costs might not have been ripe until the amount of those

costs were actually known.

Ultimately, however, after analyzing the long and complex history of

the *Arthur* litigation, it is evident that the claims Island Insurance is currently

making—its duty to defend and entitlement to reimbursement—are *different* than

those it could have brought in 2006 when it issued its reservation-of-rights letter to

Kiewit.  That is, the precise claims Island Insurance are making now did not arise

until June 27, 2016 at the earliest when the Hawaii Supreme Court published

*Arthur II*.  It was then that it became established that, with an indemnity provision

like that in the Pacific Fence/Kiewit construction subcontract, a duty to defend

would not be determined until the end of the litigation.  And at that point, it had at

least arguably been established (based on the state circuit court orders from 2010)

that Pacific Fence had no duty to indemnify Kiewit—and thus, under *Arthur II*,

also had no duty to defend.  And later state circuit court decisions in 2017

confirmed that *Arthur II* applied retroactively to similarly-situated parties in the *Arthur* litigation. It was at that point when Island Insurance had a sufficient factual basis to file a declaratory relief action under *Arthur II*. *Cf. Selective Way Ins. Co. v. Hosp. Grp. Servs., Inc.*, 119 A.3d 1035, 1050 (Pa. 2015) ("Until an insurance company has a sufficient factual basis to decline to defend (and thus, decline to indemnify) its insured in a third party's action, there is no justiciable controversy for the trial court to decide, and no cause of action for declaratory judgment.") (citations omitted).

Given an earliest accrual date of June 27, 2016, Plaintiffs brought the current declaratory relief action in a timely fashion. Indeed, they brought this action shortly after the October 9, 2017 state circuit court order in the *Arthur* litigation that denied without prejudice Pacific Fence's reimbursement request. Accordingly, Kiewit's statute of limitations defense fails.

## C.    Plaintiffs' Motion is Granted in Favor of Island Insurance

Finally, the court addresses Plaintiffs' initial motion for partial summary judgment, ECF No. 36, seeking a declaration that they did not owe a duty to defend Kiewit, and thus are entitled to enforce Island Insurance's May 4, 2006 reservation-of-rights letter. Because Pacific Fence itself has no standing to bring these claims, the court's rulings are limited to Island Insurance. And, having

survived Kiewit's waiver-related challenges, Island Insurance is entitled to such a declaration.

This conclusion follows from *Arthur II* and the state circuit court's October 2017 orders. As noted earlier, if these questions are not otherwise established by claim preclusion, this court confirms that Island Insurance is entitled to a declaration that it has (and had) no duty to defend Kiewit in the *Arthur* litigation. The facts fit squarely within the Island Insurance's reservation-of-rights letter.

Under *Arthur II*, for construction-contract indemnity provisions, "the scope of [the] duty to defend is determined at the end of litigation." 138 Haw. at 97, 377 P.3d at 38. That is, "the duties to indemnify and defend in construction contracts" are "coextensive." *Id.* at 97, 377 P.3d at 38. Nothing in *Arthur II* specifically requires a final judgment to determine the "end of litigation." Rather, an indemnitor's (or potential indemnitor's) duty to defend is determined when the concomitant duty to indemnify is final. (For example, *Arthur II*'s rule appears to work like this: if at the "end of litigation," a hypothetical defendant-indemnitor was found to be liable for fifty percent of a plaintiff's damages based on that defendant-indemnitor's own negligence, then that defendant-indemnitor would be

liable not only for indemnifying the indemnitee for half the damages, but also for a corresponding amount of defense costs.)

Here, the state circuit court's October 9, 2017 order granting Pacific Fence's omnibus motion, and its October 10, 2017 Rule 54(b) judgment entered in favor of Kiewit, both confirm (if it was not clear earlier) that Kiewit has no possible liability to the Arthurs. They both confirm that Pacific Fence can have no possible indemnification responsibility. It has therefore been established—at the "end of the litigation"—that Pacific Fence had no corresponding duty to defend and is not responsible for any defense costs to Kiewit. Island Insurance is entitled to such a declaration as a matter of law under either HRS § 631-1 or 28 U.S.C. § 2201.

Moreover, Island Insurance's May 4, 2006 reservation-of-rights letter was perfectly clear. Island Insurance told Kiewit—a major construction and engineering firm and sophisticated corporate entity—that "Island reserves the right to stop paying for Kiewit's defense . . . should it be determined that there is no potential for Pacific Fence to have to indemnify Kiewit under the subcontract for the Kalawahine Streamside project," and that "Island reserves the right to seek reimbursement from Kiewit of attorneys fees and other costs of defense if it is determined that Pacific Fence was not obligated to defend Kiewit under the

subcontract."  ECF No. 36-17 at PageID #913.  Under the terms of that letter, it has been determined (if not by the state circuit court, then by this court) that "Pacific Fence was not obligated to defend Kiewit under the subcontract," and thus Island Insurance has the right to seek reimbursement.

Kiewit argues, as it did to the state circuit court, that no Hawaii court has specifically allowed the enforcement of such a reservation-of-rights letter by an insurance company.  It asks the court to follow what appears to be an "emerging rule" that insurance companies may not seek reimbursement of defense costs for non-covered claims against an insured, especially where the insurance policy itself does not contain a right to reimbursement (and where Pacific Fence's Island Insurance CGL policy did not include a right of reimbursement).  *See, e.g.*, *National Sur. Corp. v. Immunex Corp*., 297 P.3d 688, 693 (Wash. 2013) (en banc) ("More recently, however, courts deciding in the first instance whether insurers can recover defense costs have generally concluded that they cannot."); *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1102 (Ill. 2005) ("As a matter of public policy, we cannot condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend."); *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2

A.3d 526, 544 (Pa. 2010) ("Where the insurance contract is silent about the insurer's right to reimbursement of defense costs, permitting reimbursement for costs the insurer spent exercising its right and duty to defend potentially covered claims prior to a court's determination of coverage . . . would amount to a retroactive erosion of the broad duty to defend."); *see also* Restatement of the Law of Liability Insurance § 21 (Oct. 2019 update) ("Unless otherwise stated in the insurance policy or otherwise agreed to by the insured, an insurer may not seek recoupment of defense costs from the insured, even when it is subsequently determined that the insurer did not have a duty to defend or pay defense costs.") (adopting "minority" position).

On the other hand, Island Insurance points to other case law holding the opposite—*i.e.*, that an insurer is allowed to seek reimbursement from an insured of defense costs incurred defending uncovered claims, if the insured is given proper notice by a reservation of rights letter. *See, e.g.*, *Scottsdale Ins. Co.*, 2007 WL 2247795, at *7 (predicting Hawaii law under the *Erie* doctrine); *Buss v. Superior Court*, 939 P.2d 766, 776 (Cal. 1997) (holding that "[a]s to the claims that are not even potentially covered . . . the insurer may indeed seek reimbursement for defense costs . . . . The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact

in the policy as contractual."); *Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 125 (Conn. 2003) ("Where the insurer defends the insured against an action that includes claims not even potentially covered by the insurance policy, a court will order reimbursement for the cost of defending the uncovered claims in order to prevent the insured from receiving a windfall."); *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991) (en banc) ("The appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated.").

This caselaw, however, is inapplicable one way or the other, and ultimately has little bearing on the question before the court.  As emphasized throughout, Kiewit was not an insured of Island Insurance.  This case does not, for example, involve Island Insurance seeking reimbursement from *Pacific Fence* for costs Island Insurance incurred in defending Pacific Fence.  Nor does it involve Island Insurance's right to seek reimbursement from *Pacific Fence* for costs that Island Insurance expended for a potential "loss" under its CGL policy's "insured contract" clause (now that *Arthur II* has clarified the legal landscape).  Rather, it

involves enforcing an unambiguous reservation-of-rights letter against Kiewit, a third-party, to recover costs of defense that Island Insurance incurred based on a theory that the Hawaii Supreme Court in *Arthur II* discredited.[27]  *Arthur II* held that the Kiewit/Pacific Fence subcontract's indemnity clause was void and violated HRS § 431:10-222 to the extent it required an immediate defense of potentially non-covered claims.  Island Insurance should not have been defending Kiewit.

The tension in case law regarding the insurer-insured reimbursement question generally turns on whether the insurance policy itself contains a right to reimbursement—as opposed to being asserted only in a reservation-of-rights letter. And cases disallowing reimbursement are based in significant part on the well-established principle of insurance law that a duty to defend an entire suit (including uncovered claims) arises immediately whenever there is a potential for

---

[27] Kiewit—which was receiving a defense under an "insured contract" provision in Pacific Fence's Island Insurance CGL policy—was not an intended third-party beneficiary entitled to enforce provisions of that CGL policy.  *See, e.g., York Int'l Grp. v. Cincinnati Ins. Co.*, 2007 WL 2667984 at *8 (E.D. Pa. Sept. 5, 2007) ("[T]he fact that the CGL Policy contains an 'insured contract' clause does not manifest sufficient intent to confer third-party beneficiary status upon the [indemnitee]."); *Tremco, Inc. v. Penn. Mfrs. Ass'n Ins. Co.*, 832 A.2d 1120, 1122-23 (Pa. Super. Ct. 2003) (finding an indemnitee was not an intended third-party beneficiary although covered under a CGL policy for "damages . . . [a]ssumed in a contract or agreement that is an 'insured contract'"—the same "insured contract" provision in Island Insurance's CGL policy); *cf. Simmons v. Puu*, 105 Haw. 112, 118, 94 P.3d 667, 673 (2004) (concluding that an injured third-party claimant is not a third-party beneficiary of a self-insurer, and that the tort of bad faith only arises out a contractual relationship between an insurer and an insured).

Indeed, under *Simmons*, it appears that Kiewit's bad faith counterclaim against Island Insurance fails as a matter of law.

indemnification.  *See, e.g.*, *Jerry's Sport Ctr.*, 2 A.3d at 544 ("[P]ermitting

reimbursement for costs the insurer spent exercising its right and duty to defend

potentially covered claims prior to a court's determination of coverage . . . would

amount to a retroactive erosion of the broad duty to defend[.]").

But neither of those factors exists here.  Kiewit was not a party to

Pacific Fence's Island Insurance CGL policy and was not an intended third-party

beneficiary entitled to enforce it.  *See, e.g.*, *York Int'l Grp.*, 2007 WL 2667984 at

*8.  Thus, any lack of (or inclusion of) reimbursement language in that policy is

only significant as to reimbursement from *Pacific Fence*, and is immaterial to

determining *Kiewit's* rights.  And, after *Arthur II*, the duty to defend with a

construction-contract indemnity provision is not determined until the end of

litigation.  In this context, the duty to defend is narrow, not broad—there is no

"complaint allegation" rule.

Accordingly, the court need not reach—and offers no opinion

regarding—the still apparently unresolved question of Hawaii law whether (or

under what circumstances) an insurance company defending an insured under a

reservation of rights would be entitled to seek reimbursement of defense costs.

As it is, then, the court relies on a quasi-contact theory of unjust

enrichment to allow Island Insurance to enforce its reservation-of-rights letter.

*See, e.g.*, *Durette v. Aloha Plastic Recycling, Inc.*, 105 Haw. 490, 505, 100 P.3d 60, 75 (2004) (recognizing the doctrine of unjust enrichment where someone "conferred a benefit upon the opposing party and that the retention of that benefit would be unjust") (citation, quotations, and brackets omitted); *Small v. Badenhop*, 67 Haw. 626, 636, 701 P.2d 647, 654 (Haw. 1985) ("[I]t is axiomatic that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'") (quoting Restatement of Restitution § 1); *Hong v. Kong*, 5 Haw. App. 174, 181, 683 P.2d 833, 840 (1984) (indicating that an action in quasi-contract lies to prevent one person from being inequitably enriched at another's expense).

As previously explained, Island Insurance was defending Kiewit based on an indemnity clause that violated Hawaii law. It should not have been defending Kiewit, and had no such duty. Nevertheless, it successfully defended Kiewit. The court recognizes, especially after reviewing and analyzing the complex and lengthy background of this action, that this may be a unique situation necessarily resulting from *Arthur II's* application to existing parties. Even so, however, unjust enrichment principles apply. And as set forth in the plain terms of its reservation-of-rights letter, Island Insurance is entitled to reimbursement.

# V.  <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS Kiewit's amended countermotion, ECF No. 57 and motion for summary judgment as to Pacific Fence, ECF No. 49, in PART.  Pacific Fence is DISMISSED as a plaintiff.  In all other respects, those motions are DENIED.

Kiewit's motions for summary judgment as to Island Insurance, ECF No. 51 is DENIED.

Plaintiffs' motion for partial summary judgment, ECF No. 36, is GRANTED in part as to Island Insurance.  Island Insurance had no duty to defend Kiewit, and may enforce its May 4, 2006 reservation-of-rights letter.

The parties are directed to meet and confer within two weeks of this order to discuss whether or to what extent other aspects of this case remain.  By way of example only, although Island Insurance's complaint alleges that it incurred $213,867.46 in defense fees and costs, are further proceedings necessary to confirm or challenge that amount?  Does Kiewit intend to pursue its bad faith counterclaim against Island Insurance?[28]  After meeting and conferring, the parties are further directed to contact Magistrate Judge Wes Porter to arrange a scheduling

---

[28] As noted above, *Simmons* indicates that an injured third-party claimant may not sue the tortfeasor's insurer for bad faith.  *See* 105 Haw. at 118, 94 P.3d at 673.

or status conference to discuss a schedule for any further proceedings in this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 22, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*GGA, Inc., dba Pacific Fence et al. v. Kiewit Infrastructure West Co.*, Civ. No. 18-00110 JMS-WRP, Order Granting in Part and Denying in Part Motions for Summary Judgment or Partial Summary Judgment, ECF Nos. 36, 49, 51, 57